CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

September 6, 2013

LETTER TO COUNSEL:

      RE:    *Barton Carey v. Commissioner, Social Security Administration*;
              Civil No. SAG-12-3583

Dear Counsel:

      On December 6, 2012, the Plaintiff, Barton Carey, petitioned this Court to review the Social Security Administration's final decision to deny his claims for Supplemental Security Income and Disability Insurance Benefits. (ECF No. 1). I have considered the parties' cross-motions for summary judgment, and Mr. Carey's reply. (ECF Nos. 17, 19, 20). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will grant the Commissioner's motion and deny Plaintiff's motion. This letter explains my rationale.

      Mr. Carey filed his claims on August 13, 2009, alleging disability beginning on April 28, 2009. (Tr. 161-70). His claims were denied on July 6, 2010. (Tr. 92-99). A hearing was held on August 3, 2011 before an Administrative Law Judge ("ALJ"). (Tr. 46-78). Following the hearing, on December 29, 2011, the ALJ determined that Mr. Carey was not disabled during the relevant time frame. (Tr. 15-45). The Appeals Council denied Mr. Carey's request for review (Tr. 1-6), so the ALJ's decision constitutes the final, reviewable decision of the agency.

      The ALJ found that Mr. Carey suffered from the severe impairments of degenerative disc disease, affective disorder, and polysubstance abuse/dependence. (Tr. 20). Despite these impairments, the ALJ determined that Mr. Carey retained the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can only occasionally bend, kneel, stoop, crouch, balance and climb; and must avoid even moderate exposure to extreme cold.

(Tr. 25). Without considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Carey was not disabled pursuant to Medical-Vocational Rule 202.21, because his nonexertional limitations have "little or no effect on the occupational base of unskilled light work." (Tr. 40). The ALJ also found job examples from occupational databases that the ALJ believed Mr. Carey could perform. *Id.*

Mr. Carey presents five arguments on appeal: (1) the ALJ erred in assigning weight to treating physician Dr. Gregg and consultative examiner Dr. Honick; (2) the ALJ erroneously relied on the Medical-Vocational Guidelines ("the Grids") and erred by consulting occupational databases without expert testimony; (3) the ALJ failed to consider Mr. Carey's reasons for noncompliance with prescribed treatment; (4) the ALJ erroneously made an adverse credibility determination; and (5) new and material evidence warrants remand. His arguments lack merit.

Mr. Carey first contests the assignment of weight to the opinions of his treating physician, Dr. Gregg, and a consultative examiner, Dr. Honick. Pl. Mot. 9-11. Although the opinion of a treating physician can be entitled to controlling weight, such an opinion is not entitled to such weight if it is inconsistent with the other substantial evidence of record. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ provided extensive analysis, including eight separate reasons, for assigning little weight to Dr. Gregg's opinion. (Tr. 37). Although some of the reasons are vague or speculative, the ALJ cited to substantial evidence justifying the assignment of little weight, including Mr. Carey's extensive activities of daily living, the relatively sparse number of appointments during which Dr. Gregg examined Mr. Carey, the conservative course of treatment Dr. Gregg pursued, and the dearth of significant clinical and laboratory abnormalities. *Id.* Similarly, the ALJ offered seven reasons for assigning little weight to the opinion of the consultative examiner, Dr. Honick. (Tr. 38). Again, some of the reasons are unpersuasive, but the ALJ cited to substantial evidence including the fact that Dr. Honick had only examined Mr. Carey on one occasion, and that the clinical findings during that examination did not support the severe restrictions indicated in Dr. Honick's opinion, which the ALJ deemed to be "inconsistent." *Id.* My role is not to reweigh the evidence or to substitute my own judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence. *See Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Under that standard, the assignments of weight should be affirmed.

Mr. Carey next contends that the ALJ erred by relying upon the Medical-Vocational Guidelines to decide his case, rather than obtaining VE testimony. Pl. Mot. 11-13. As a general matter, the Fourth Circuit has ruled that where a claimant "demonstrates the presence of nonexertional impairments," the Commissioner must use expert vocational testimony, rather than relying on the Medical-Vocational Guidelines. *Grant v. Schweiker,* 699 F.2d 189, 192 (4th Cir. 1983). However, over time the broad language of *Grant v. Schweiker* has been read somewhat more narrowly. As set forth by this Court in *Mackall v. Astrue:*

> The mere presence of nonexertional impairments does not, *per se,* preclude application of the Medical-Vocational Guidelines, as nonexertional limitations rise to the level of nonexertional impairments and preclude the use of the guidelines only when the limitations are significant enough to prevent a wide range of gainful employment at the designated level. Not every non-exertional impairment precludes reliance on the grids.

No. 1:08–cv–03312–PWG, 2010 WL 3895345, at *1 (D. Md. Sept. 30, 2010) (citations omitted).

Here, there was substantial evidence from which the ALJ could properly find that some of Mr. Carey's RFC limitations were not "significant enough to prevent a wide range of gainful employment" in work at the light level. *Mackall,* 2010 WL 3895345, at *1. Mr. Carey's environmental limitation, barring only "even moderate exposure to extreme cold," would not significantly erode the occupational base. *See* SSR 85-15, 1985 WL 56857, at *8 ("Where a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc."). Most job environments do not involve any exposure to "extreme cold." Similarly, a limitation to occasional stooping, bending, kneeling, and crouching does not have a material effect on the base. *See id.* at *7 ("If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact."). Finally, if a person has a limitation in climbing and balancing, "it would not ordinarily have a significant impact on the broad world of work." *Id.* at *6. Because none of the nonexertional impairments at issue prevented a wide range of gainful employment, the ALJ's reliance on the Grids was proper.[1] I do find that the ALJ's use of vocational databases to find jobs for Mr. Carey, in the absence of VE testimony, was improper. However, the ALJ's job search was superfluous, as the application of the Grids and the finding of "not disabled" ended the required application of the sequential analysis.

Next, Mr. Carey argues that the ALJ failed to consider the reasons for his non-compliance with prescribed medical treatment, and that the ALJ erred in assessing his credibility. Pl Mot. at 13-16. I disagree with both contentions. With respect to the credibility of Mr. Carey's asserted level of pain, the ALJ provided an extensive, seven-page analysis setting forth all of the reasons he did not find Mr. Carey's testimony to be credible. (Tr. 28-36). Specifically, the ALJ cited Mr. Carey's activities of daily living, his reports to various medical providers about his physically strenuous hobbies and interests, the observations from various medical providers during examinations and office visits, Mr. Carey's provision of inconsistent statements regarding his back problems, his efforts to seek employment, various statements to doctors suggesting possible malingering, and the ALJ's own observations during the hearing. *Id.* As one part of the overall credibility analysis, the ALJ did make a finding that Mr. Carey "has not fulfilled his responsibility to follow prescribed treatment." (Tr. 35). However, the ALJ did not find Mr. Carey "not disabled" on the basis of that non-compliance. Instead, the ALJ continued with the analysis of Mr. Carey's credibility and the evaluation and assignment of weight to various medical opinions in order to determine Mr. Carey's RFC. (Tr. 35-39). In light of the fact that the ALJ did not base his ruling on Mr. Carey's alleged noncompliance with prescribed treatment, the case cited by Mr. Carey, *Preston v. Heckler,* 769 F.2d 988 (4th Cir. 1985), is inapposite. *Preston* and the corresponding regulations govern only where an individual would have been found disabled except for the failure "without justifiable cause to follow treatment

---

[1] Mr. Carey also contends that the ALJ's finding of a severe affective disorder precludes reliance on the Grids. Pl. Reply 2-3. However, the ALJ did an appropriate application of the special technique for evaluating mental impairments, (Tr. 24), and determined that Mr. Carey encounters only mild difficulties. An ALJ is not required to include a limitation in an RFC corresponding to each severe impairment, and only nonexertional limitations that prevent a wide range of gainful employment at a designated level preclude reliance on the Grids.

prescribed by a treating source." *See Myers v. Commissioner of Social Sec. Admin.*, 456 Fed. Appx. 230, 232 (4th Cir. 2011).

Finally, Mr. Carey contends that consideration of new and material evidence, namely the records of his two back surgeries, would result in remand. I concur with the Commissioner that Mr. Carey has not offered good cause for his failure to submit the records of his first surgery to the Appeals Council. Def. Mot. 21-22. As a result, I cannot review those records as new and material evidence. *See* 42 U.S.C.A. § 405(g); *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (superseded by amendment to statute) (requiring a claimant seeking remand to show "good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner."). With respect to the second surgery, the limited records submitted do not provide sufficient evidence to determine the reasons for the s econd surgery, the circumstances for the onset of the issues and whether they relate to the period prior to the ALJ's decision, or the effects of the surgery on Mr. Carey's ability to work. Mr. Carey therefore has not established that the records of the second surgery were material to the Commissioner's decision in that they reasonably might have changed the decision. In the absence of such evidence, the records do not constitute "new and material evidence." *Id.*

For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 17) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 19) will be GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge